UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY HICKS,

        Plaintiff,                    Case No. 2:07-cv-14916

v.                                HONORABLE STEPHEN J. MURPHY, III

ROBERT NAPEL,

        Defendant.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** (document no. 1)**, CLOSING THE CASE, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Rodney Hicks, currently on parole supervision with the Michigan Department of Corrections through the Wayne County Parole Office in Detroit, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for unarmed robbery and being a fourth felony habitual offender, Mich. Comp. Laws §§ 750.530, 769.12. For the reasons stated below, the Court will deny the petition.

## BACKGROUND

Hicks was convicted following a jury trial in the Wayne County Circuit Court. The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises out of an incident on March 28, 2001, outside a Mobil gasoline station on Fenkell Road in Detroit. Erin Branham, the victim, testified that she arrived at the gas station around to meet a coworker who daily drove her to work. Branham entered the station to make a purchase and noticed that two men entered shortly after she did. She recognized them from other encounters at the gas station and had a brief conversation with them. After making her purchase, Branham left the station and waited outside for her coworker. As she stood with her purse strap over her shoulder and her hand on her purse, she felt someone pulling her purse strap from behind her. She

reacted by moving forward, and the tugging grew stronger, forcing her backward. She struggled to hold on to her purse, but the perpetrator wrestled the purse away from her and ran down Fenkell Street. As the perpetrator ran away, Branham recognized him as one of the men she spoke to in the gas station that morning, later identified as defendant.

Valerie Jackson, an employee of the Mobil station, witnessed the incident from inside the gas station. Immediately after the incident, Branham entered the gas station and asked Jackson to call the police, which she did. A few minutes later, Branham flagged down two passing police officers, Officer Mark Frazier and Officer John Baritche, told them about the incident, and described the perpetrator to them. Jackson confirmed Branham's description of the perpetrator to the officers, and the officers immediately  informed their dispatcher of the crime and the perpetrator's description.

A few minutes later, the officers received a call from their police sergeant, who was at a BP gas station six or seven blocks down the street. Officers Frazier and Baritche went to the BP station and saw a man who matched Branham's description of the perpetrator. The officers approached the man, whom Officer Frazier identified in court as defendant, and arrested him. When the officers searched defendant's person upon arrest, papers, bills, and medical cards, including items belonging to the victim, fell out of defendant's sweatshirt.

After his arrest, defendant provided a written statement that read: "[Y]es, I was in the gas station. Me and her [sic] talked for a while. She went outside to look for her ride, and I went outside and snatched her purse and went about my business."

During trial, defendant, who represented himself with the assistance of his former counsel, rested without presenting any evidence. In his closing argument, defendant admitted committing larceny from a person, but claimed that he did not commit unarmed robbery. The jury convicted defendant of unarmed robbery. The trial court subsequently sentenced defendant to 14 to 22-1/2 years' imprisonment, departing from the sentencing guidelines range of 50 to 125 months. Defendant now appeals.

*People v. Hicks*, 259 Mich. App. 518, 520–21 (2003).

Hicks's conviction was affirmed on appeal. *Id., lv. den.* 471 Mich. 97 (2004);

*reconsideration den.*, 472 Mich. 869 (2005).

Hicks filed a post-conviction motion for relief from judgment on November 21, 2005.

On November 29, 2005, Hicks filed a supplemental post-conviction motion for relief from

judgment. The trial court denied the motions. *People v. Hicks,* No. 01-004688-01 (Third Jud. Cir. Ct. Dec. 13, 2005). The Michigan appellate courts denied Hicks leave to appeal. *People v. Hicks,* No. 274181 (Mich. Ct. App. May 14, 2007); *lv. den.* 480 Mich. 921 (2007).

On November 16, 2007, Hicks filed a petition for a writ of habeas corpus, which was ultimately held in abeyance so that Hicks could complete additional post-conviction proceedings in the state courts. *Hicks v. Bell*, No. 2:07-cv-14916, 2008 WL 2115252 (E.D. Mich. May 19, 2008).

Over the course of the next few years, Hicks filed several supplemental post-conviction motions, which were ultimately denied. *People v. Hicks,* No. 01-004688-01 (Third Jud. Cir. Ct. Aug. 11, 2014). The Michigan appellate courts denied Hicks leave to appeal. *People v. Hicks,* No. 323645 (Mich. Ct. App. Dec. 11, 2014); *lv. den.* 498 Mich. 919 (2015).

On January 25, 2016, the Court granted Hicks's motion to lift the stay and to amend the petition. Hicks seeks habeas relief on a number of grounds. For purposes of judicial clarity, the Court will adopt respondent's renumbering and paraphrasing of the claims:

I. The trial court abused its discretion when it granted Hicks's request for self-representation without determining that his waiver of counsel was unequivocal, voluntary, and knowingly made.

II. There was insufficient evidence of a forceful or violent act to support unarmed robbery.

III. The prosecutor engaged in multiple acts of prejudicial misconduct.

IV. The trial court improperly scored Offense Variable 4 and also improperly exceeded the sentencing guidelines for his minimum sentence.

V. The trial court gave improper jury instructions related to a forceful or violent act.

VI. The trial court improperly admitted hearsay.

VII. Hicks was denied the effective assistance of appellate counsel.

## STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An

"unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas

court may not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410–11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,' and 'demands that

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773

4

(2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### DISCUSSION

I.    <u>Claim One — Hicks knowingly, intelligently, and unequivocally exercised his right to self-representation</u>

Hicks first claims that the trial court erred in permitting him to represent himself at trial when he did not unequivocally request to represent himself and did not knowingly and intelligently waive his right to counsel.

The Michigan Court of Appeals rejected Hicks's claim:

Immediately before trial began in the instant case, defense counsel informed the trial court that defendant had informed her that defendant wanted to represent himself. Defendant further explained his position to the trial court:

As far as my attorney, I wouldn't say I want to fire her, but I put her on the back burner as far as she can be my assistance [sic] in dealing in this case here because everything that I asked her to do she haven't [sic] done. You know what I'm saying and . . . .

The trial court interjected, "What is that?" Defendant continued:

I feel that I'm more competent in doing the job than [defense counsel] is, you know. So, you know, but I'm not saying I want to just give up all my rights to where I would like to have an attorney on the back burner. You know that being, you know, give me a little guidance, little assistance, but I feel that I am more competent in handling this case than she was.

The trial court then inquired about why defendant believed he was more competent than his attorney and asked defendant to tell him about his background. Defendant digressed to addressing issues involved in his case, and the trial court eventually told defendant that he should speak to his attorney about the matters defendant wanted the trial court to consider. Before conferring with his attorney, defendant again told the trial court:

Before you go, before you go, I'mo [sic] say this here before you go. I could represent myself, and instead of you saying "attorney," I don't—I can do it myself. I understand what you say.

But when it comes down to we['re] in a disagreement when it come to my trial tactics, you know, she says she can't do my trial tactics. That she wants to do her own her, and it hurts me for her to do it the way she wants to do it. So I can't advise her to be my attorney if she is not in my best interest.

After defendant conferred with his attorney, the following colloquy transpired:

*The Court*: Okay. Mr. Hicks, would you stand for the moment please? Mr. Hicks, the law requires me to tell you certain items of information and ask you certain questions before I make a determination as to whether or not you're going to represent yourself. Am I correct in understanding that you absolutely want to represent yourself?

*Defendant Hicks*: Yes, sir.

*The Court*: No question about that?

*Defendant Hicks*: No question about that.

*The Court*: Okay.

6

*Defendant Hicks*: With the help of—

*The Court*: Oh, absolutely. Yes. Ms. Heard [defense counsel] will remain and sit through the case and provide you with the opportunity to consult with her. You understand that?

*Defendant Hicks*: Yes.

The trial court then stated that it was aware of *Anderson, supra*,[1] and MCR 6.005(D), and informed defendant that he was charged with unarmed robbery, which "carries with it a maximum possible penalty of 15 years in prison," and that a notice had been filed indicating that defendant was an habitual-offender, fourth offense, which meant that defendant "could face up to life in prison." Defendant replied affirmatively when asked if he understood what the trial court had told him.

The trial court also informed defendant that although he was not a lawyer, he would be required to follow the rules applying to lawyers and that it was "very unwise" for him to represent himself. Referring to a picture of Abraham Lincoln in the courtroom, the trial court informed defendant that Abraham Lincoln said that "anyone who chooses to represent himself has a fool for a client." Defendant stated that he "had heard that a thousand times." The trial court again inquired, "You wish to represent yourself; is that true, Mr. Hicks?" Defendant replied, "Yes, sir." The trial court then permitted defendant to represent himself, with his former defense counsel available to assist him[2]. Before the jury entered the courtroom on the second day of trial, the trial court asked defendant if he wished to continue representing himself, and defendant responded affirmatively.

*People v. Hicks*, 259 Mich. App. 518, 524–26 (2003).

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). But the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161.

---

[1] *People v. Anderson,* 398 Mich. 361 (1976).

[2] Although neither defendant nor the trial court used the term "standby counsel," it is clear that this familiar term accurately describes the relationship between defendant and his former attorney during the trial. Throughout the remainder of this opinion, the term "standby counsel" will be used for ease of reference. (Footnote in original).

Moreover, a defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also U.S. v. Martin,* 25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally.").

Hicks's primary contention is that he did not unequivocally request to represent himself because he agreed to allow counsel continue to assist him in a standby or advisory manner. During the trial, and with Hicks's permission, standby counsel conducted part of the cross-examination of Officers Frazier and Baritche and all of the cross-examination and re-cross examination of Valerie Jackson. Hicks conducted his own closing argument.

The Michigan Court of Appeals rejected Hicks's claim: "[A] request for self-representation can be accompanied by a request for standby counsel and maintain its unequivocal nature ." *Hicks, supra* at 528. The Michigan Court of Appeals further noted that, "[p]ermitting defendant, equipped with the benefit of hindsight, to retract his clearly stated desire to represent himself solely because he requested standby counsel is tantamount to permitting him to harbor an appellate parachute[.]" *Id.* at 530.

The mere fact that standby counsel was appointed to assist Hicks does not make his request for self-representation equivocal. The Supreme Court has repeatedly stated that a court can appoint stand-by or advisory counsel to assist a defendant who wishes to represent himself or herself at trial without violating the defendant's Sixth Amendment right to self-representation. *See Martinez,* 528 U.S. at 162*; McKaskle v. Wiggins,* 465 U.S. 168, 176–77 (1984); *Faretta,* 422 U.S. at 834 n.46.

Courts have found a criminal defendant's waiver of the right to counsel and the request to represent himself or herself at trial to be unequivocal even where standby

counsel is appointed to assist the defendant. *See United States v. Peck,* 62 F. App'x 561, 568 (6th Cir. 2003) (defendant's request that stand-by counsel assume more active role in defense did not act as revocation of his waiver of his right to counsel, where court had previously advised defendant that it would not permit "hybrid" trial, and defendant never attempted to revoke his waiver); *see also Alford v. McCullum,* 613 F. App'x 714, 718 (10th Cir. 2015) (state appellate court did not act contrary to, or unreasonably apply, clearly applicable federal law in determining that waiver of counsel was knowing and voluntary and that petitioner did not suffer any violation of his Sixth Amendment right to counsel, where petitioner told state court trial judge that he was unhappy with his lawyers and wanted to proceed without counsel, he unequivocally stated that he did not want court-appointed counsel to "lead" his defense and instead preferred to represent himself with stand-by counsel, and he repeatedly reiterated this preference even after being informed of dangers of self-representation); *United States v. Williams,* 391 F. App'x 675, 678–79 (9th Cir. 2010) (defendant's waiver of his right to counsel was knowing, intelligent, and unequivocal, although defendant requested different counsel, which the District Court agreed to provide with the understanding that it might further delay his trial, where defendant definitively reaffirmed his determination to represent himself with his original attorney as standby counsel).

The record reflects that Hicks repeatedly stated his desire to represent himself at trial. The mere fact that he also agreed to the assistance of standby counsel does not render his request for self-representation equivocal or revoke his waiver of counsel. The Court further finds that Hicks knowingly and voluntarily waived his right to counsel.

9

The United States Supreme Court has held that a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A defendant's waiver of his right to counsel must "be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). The waiver must be "done with sufficient awareness of the relevant circumstances." *Id.* at 81 (internal quotation marks omitted). It is the criminal defendant's burden to prove that he or she "did not competently and intelligently waive" his or her right to the assistance of counsel. *Id.* at 92.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she "'is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* The failure of a district court in a federal criminal case to give a particular prophylactic warning and conduct a particular inquiry in determining whether a defendant should be permitted to waive his or her right to counsel does not in and of itself require reversal of a conviction. *See U.S. v. McDowell*, 814 F. 2d 245, 248–49 (6th Cir. 1987). There is therefore no clearly established

federal law, as determined by the Supreme Court, requiring any specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 F. App'x 577, 580 (6th Cir. 2003); *see also Sullivan v. Pitcher*, 82 F. App'x 162, 165 (6th Cir. 2003) (a formal inquiry into a defendant's desire to proceed pro se "is not a sine qua non of constitutional waiver").

Hicks knowingly and intelligently waived his right to counsel. Before accepting Hicks's waiver, the trial judge advised Hicks of the maximum penalties for unarmed robbery and for the habitual offender charges. The judge warned Hicks that although he was not a lawyer, he would be required to follow the rules that lawyers were required to abide by. The judge admonished Hicks that it would be "unwise" to represent himself and reminded him of President Lincoln's maxim that a person who represents himself or herself "has a fool for a client."  The trial judge also asked Hicks on the second day of trial if he wished to continue representing himself and he confirmed that he did. The Court concludes that Hicks is not entitled to habeas relief because the Michigan Court of Appeals reasonably determined that Hicks was sufficiently warned of the dangers of self-representation yet voluntarily, knowingly, and intelligently waived his right to counsel. *See Mack v. Holt*, 62 F. App'x at 580. Hicks is not entitled to relief on his first claim.

II.   Claim Two — Hicks's conviction was supported by sufficient evidence

Hicks next contends that there was insufficient evidence to sustain his conviction of unarmed robbery because the prosecution did not present evidence that he took the

victim's purse "by force and violence, or by assault or putting in fear," one of the required elements for unarmed robbery. The Michigan Court of Appeals rejected Hicks's claim:

> Viewing the evidence in a light most favorable to the prosecution, the testimony reflects that the victim felt a tug on her purse strap, was pulled backward, reflexively lurched forward, and tried to turn her body to maintain possession of her purse. Additionally, the victim testified that the struggle aggravated her tendonitis. Valerie Jackson also testified that defendant and Branham struggled over the purse. This evidence supports a conclusion that defendant took the purse by force and violence. Moreover, the force exerted by defendant was contemporaneous with the taking and, therefore, sufficient to support a verdict of unarmed robbery.

*People v. Hicks*, 259 Mich. App. 518, 531–32 (2003).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (internal citation and footnote omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson*

12

standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

The elements of unarmed robbery are:

1. The felonious taking of property from another;
2. By force, or violence, or assault, or putting in fear; and,
3. Being unarmed.

*People v. Johnson,* 206 Mich. App. 122, 125–26 (1994). The unarmed robbery statute is disjunctive in nature, which means that a defendant may commit the crime either by force or violence, or by assault, or by putting in fear. *People v. Berry,* 112 Mich. App. 79, 82 (1981).

The evidence, when viewed in a light most favorable to the prosecution, supports a finding that Hicks used force or violence to take the victim's purse. The victim testified that she felt a tug on her purse strap, was pulled backward, before lurching forward. The victim attempted to turn her body to keep her purse. The victim testified that the struggle aggravated her tendonitis. Valerie Jackson also testified that Hicks and the victim struggled over the purse. The Michigan Court of Appeals' reasonably concluded that there was sufficient evidence that Hicks used force and violence to steal the victim's purse, so as to support his unarmed robbery conviction. Hicks is not entitled to relief on his second claim.

13

III.  Claim Three — Hicks's prosecutorial-misconduct claims are procedurally defaulted

Hicks next contends that he was deprived of a fair trial because of several instances of prosecutorial misconduct. In response, Respondent contends that the claim is procedurally defaulted because Hicks never objected to the alleged misconduct at trial.

The Michigan Court of Appeals ruled that since Hicks did not object to the prosecutor's remarks, the prosecutorial misconduct claims were unpreserved and would be reviewed for plain error. *People v. Hicks,* 259 Mich. App. at 522.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, however, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479–80 (1986). But to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

The Michigan Court of Appeals clearly indicated that by failing to object to the prosecutorial misconduct, Hicks failed to preserve his claim. The fact that the Michigan Court of Appeals engaged in plain-error review of Hicks's claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, the Court reviews the Michigan Court of Appeals' review of Hicks's prosecutorial misconduct claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Hicks's third claim is procedurally defaulted.

Hicks failed to offer any reasons to excuse the procedural default. Because Hicks has not demonstrated any cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue. *Smith*, 477 U.S. at 533; *see also Alexander v. Smith,* 342 F. Supp. 2d 677, 685 (E.D. Mich. 2004). Hicks has also not presented any new, reliable evidence to support any assertion of innocence which would allow the Court to consider this claim as a ground for a writ of habeas corpus in spite of the procedural default. Hicks's sufficiency of evidence claim (Claim #2) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because Hicks has not presented any new reliable evidence that he is innocent of the crime, a miscarriage of justice will not occur if the Court declines to review the procedurally defaulted claim on the merits. *See Alexander*, 342 F. Supp. 2d at 685. Hicks is not entitled to relief on his third claim.


IV.  <u>Claim Four — Hicks's sentencing-guidelines claims are non-cognizable</u>

In his fourth claim, Hicks claims that the trial judge improperly scored Offense Variable 4 of the Michigan Sentencing Guidelines. Hicks further claims that the judge improperly departed above the sentencing guidelines range in imposing sentence.

Hicks's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state-law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Hicks "had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.* Hick's claim that the state trial court improperly departed above the correct sentencing guidelines range would not entitle him to habeas relief, because such a departure does not violate any of Hicks's federal due process rights. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000).

V.   <u>Claim Five — Hicks is not entitled to habeas relief on his jury-instruction claim</u>

Hicks next claims that the judge gave the jurors an inaccurate supplemental instruction on the elements of unarmed robbery. The jury was instructed on the offenses of unarmed robbery and the lesser included offense of larceny from a person. After the jurors began deliberating, they sent a note to the judge, in which they asked: "please clarify whether force and violence are required for unarmed robbery, are both or one required."  The judge indicated, without any objection from Hicks, that he would again read the first element for unarmed robbery from the unarmed robbery statute. Tr. 10/29/01 at 198.

16

The judge then instructed the jurors as follows:

[The Court:] The additional element for unarmed robbery is sort of in three alternatives. Either that the defendant assaulted Erin Branham or used both force and violence, or third put Erin Branham in fear. The defendant must either have attempted or threatened to do immediate injury to Erin Branham and was able to do so, or the defendant must have committed a forceful or violent act that made Erin Branham reasonably afraid of being injured at the time or otherwise put Erin Branham in fear.

*Id.* at 199.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state-court conviction is even greater than the showing required in a direct appeal. The question in a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154–155 (1977). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

The Court has already noted that Michigan's unarmed robbery statute is disjunctive, and a defendant may therefore commit the crime either by force or violence, or by assault, or by putting in fear. *People v. Berry,* 112 Mich. App. 79, 82 (1981). The jury instruction as given was an accurate reflection of Michigan law. Hicks is not entitled to relief on his fifth claim.

VI.   <u>Claim Six — Hicks's right to confrontation was not violated by the admission of out-of-court statements of witnesses who testified at trial</u>

17

Hicks appears to argue within a couple of his claims that his Sixth Amendment right to confrontation was violated by the admission of out-of-court statements by Erin Branham and Officer Patrick Snider, both of whom testified at trial.

There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted). When a declarant's out-of-court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the *opportunity* to cross-examine the declarant at trial." *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010). Because Ms. Branham and Officer Snider testified at Hicks's trial and were subject to cross examination, the admission of their out-of-court statements did not violate petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008). Hicks is not entitled to relief on his sixth claim.

## VII. <u>Claim Seven — Hicks was not denied the effective assistance of appellate counsel</u>

Hicks lastly contends that his appellate counsel was ineffective for failing to raise what make up his fifth and sixth claims in his petition.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). But court-appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Court has already determined that Hicks's fifth and sixth claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in the handling of Hicks's direct appeal. Hicks is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

VIII.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of the Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a COA indicating which issues satisfy the required showing or provide reasons why the certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

19

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S at 336–37. "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Hicks has not made a substantial showing of the denial of a constitutional right with respect to his claim. *See* 28 U.S.C. § 2253(c)(2). Hicks should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court sees no good-faith basis for an appeal, any appeal would be frivolous. The Court will therefore deny a certificate of appealability and consequently deny Hicks leave to appeal in forma pauperis. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus (document no. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Hicks is **DENIED** leave to appeal in forma pauperis.

**SO ORDERED.**


s/Stephen J. Murphy, III_____
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 21, 2016


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 21, 2016, by electronic and/or ordinary mail.

s/David P. Parker_____
Acting Case Manager